# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

### No. 17-10V

Filed: October 13, 2020

```
* * * * * * * * * * * * * * * * * * * * * * * * *  *
                                                   *
                                                   *
ROGER LAMARRE,                                     *    TO BE PUBLISHED
                                                   *
                  Petitioner,                      *
                                                   *
v.                                                 *    Special Master Katherine E. Oler
                                                   *
SECRETARY OF HEALTH AND                            *
HUMAN SERVICES,                                    *    Attorneys' Fees and Costs; Reasonable
                                                   *    Basis; Six Months of Sequelae
                                                   *
                  Respondent.                      *
                                                   *
* * * * * * * * * * * * * * * * * * * * * * * * *  *
```

*Amy Senerth*, Muller Brazil, LLP, Dresher, PA, for Petitioner
*Debra Begley*, U.S. Department of Justice, Washington, DC, for Respondent

## DECISION ON FINAL ATTORNEYS' FEES AND COSTS[1]

On January 4, 2017, Roger Lamarre ("Mr. Lamarre" or "Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program") alleging he developed a right shoulder injury related to vaccine administration ("SIRVA") from the influenza ("flu") vaccination he received on November 5, 2015. Pet. at 1, ECF No. 1.

---

[1] This Decision will be posted on the Court of Federal Claims' website. **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). If, upon review, I agree that the identified materials fit within this definition, I will redact such material from public access. Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

Because I find the petition did not possess a reasonable basis when it was filed or at any time during the pendency of this case, I hereby **DENY** Petitioner's application for attorneys' fees and costs.

## I.      Petitioner's Relevant Medical History

Petitioner had a history of hypertension, hyperlipidemia, anxiety, depression, dysuria, back pain, right bicep surgery, foot pain, multilevel degenerative disc disease, bursitis of left hip, and allergic rhinitis. *See generally* Exs. 1-18.

### A. Petitioner's Medical Records from Vaccination through Six Months Post-Vaccination

On November 5, 2015, Petitioner received a flu vaccination in his right arm[3] from his primary care physician ("PCP"), Dr. Botelho. Ex. 1 at 1; Ex. 2 at 56. On November 10, 2015, Petitioner called Dr. Botelho's office to report that he had been experiencing right shoulder pain since vaccination and wanted to schedule an appointment. Ex. 5 at 2. He was informed that the vaccination was in his left arm and that pain following vaccination was normal. *Id.* at 2, 5. Petitioner called back the next day to report "extreme pain in [his] right shoulder." *Id.* at 2.

On November 14, 2015, Petitioner presented to Garden City Treatment Center with a ten-day history of right shoulder pain. Ex. 2 at 14-16. Petitioner was diagnosed with a right shoulder ligament strain. Ex. 4 at 7. On November 16, 2015, Petitioner presented to Dr. Botelho, cradling his right arm and complaining of right shoulder pain. Ex. 2 at 49-52. Petitioner denied any trauma or injury and was instructed to use anti-inflammatories and apply heat to the affected area. *Id.* at 52.

On November 23, 2015, Petitioner presented to Dr. Louis Mariorenzi at Orthopaedic Associates, Inc. with right shoulder pain. Ex. 3 at 3. Dr. Mariorenzi diagnosed Petitioner as having synovitis and noted that the pain began after Petitioner received a flu vaccination three weeks prior. *Id.* Petitioner returned on December 21, 2015 for continued right shoulder pain. Ex. 8 at 1. Dr. Mariorenzi recommended that Petitioner continue a home exercise program and follow-up in three weeks. *Id.*

Petitioner saw Dr. Matthew Salisbury on February 2, 2016 for dizziness, cough, and nasal drip. Ex. 2 at 46-49. There was no record that Petitioner mentioned shoulder pain during this appointment. On March 7, 2016, Petitioner saw Dr. Botelho for a follow-up appointment. Ex. 2 at 41-46. Petitioner noted that he felt better after changing his blood pressure medication and denied "other concerns." *Id.* at 42.

---

[3] The injection site was disputed. In a Decision Denying Entitlement, I found Petitioner's conversations with Dr. Botelho's office where he indicated that he received his flu shot in his right arm to be persuasive. I determined that the injection site was in the right arm and that Petitioner experienced onset of pain within 48 hours of his flu vaccination. I denied entitlement because I found Petitioner did not demonstrate that he experienced six months of sequelae. *See Lamarre v. Sec'y of Health & Hum. Servs.*, 2019 WL 7556396 at *10 (Fed. Cl. Spec. Mstr. Nov. 6, 2019).

On April 10, 2016, Petitioner was seen for a lower back injury he sustained in a karate class on April 7, 2016. Ex. 4 at 10. He was diagnosed with a back sprain/strain and was prescribed medication for pain management. *Id.* There was no mention of shoulder pain.

### B. Petitioner's Medical Records after Six Months Post-Vaccination

On May 9, 2016, Petitioner presented to Dr. Botelho with complaints of foot pain. Ex. 2 at 38-41. Petitioner told Dr. Botelho that "his [right] foot has been hurting him for a long time" and that he has a history of hammertoe on his second and third toes of his right foot. *Id.* at 38. There was no indication that Petitioner mentioned shoulder pain during this appointment.

On June 25, 2016, Petitioner saw Dr. Botelho for a right arm injury that occurred when he was "moving plywood and felt a pop on upper rt bicep." Ex. 4 at 13. Petitioner was assessed as having a deltoid muscle injury. *Id.* at 14.

On July 7, 2016, Petitioner returned to Dr. Botelho for an annual examination. Ex. 2 at 33-37. Dr. Botelho evaluated Petitioner's health, including his ruptured right bicep tendon. *Id.* at 37. Petitioner was assessed with hypertension, hyperlipidemia, spontaneous rupture of tendon of biceps, and dietary management surveillance. *Id.*

On July 8, 2016, Petitioner returned to Dr. Mariorenzi for his right bicep injury. Ex. 3 at 2. Dr. Mariorenzi noted that Petitioner's rupture of the right bicep tendon was a new problem. Petitioner reported that "a few weeks ago he felt a popping sensation in the right shoulder and subsequent prominence of the distal biceps muscle." Dr. Mariorenzi further noted that Petitioner's right biceps muscle had required past repair at the elbow. He also noted that "[t]he patient's symptoms and physical findings are consistent with a rupture of the long head of the right biceps tendon at the shoulder." *Id.*

Petitioner sought treatment with Dr. Phillip Reilly for his torn right bicep on November 29, 2016 at West Bay Orthopaedics and Neurosurgery, Inc ("WBON"). Ex. 6 at 2-8. Petitioner presented to WBON with a four-month history of right biceps tear. Ex. 6 at 6. The record indicates that he had "an acute tearing sensation and subsequently had pain and deformity." *Id.* Therapy was recommended as an initial step. No therapy records were submitted.

No other medical records submitted are relevant to a determination regarding reasonable basis.

### II.    Procedural History

On January 4, 2017, Petitioner filed his petition, alleging that the flu vaccination he received on November 5, 2015 caused him to suffer from a right shoulder injury.[4]

---

[4] This case was initially assigned to the Special Processing Unit ("SPU"). It was reassigned to Special Master Roth on September 6, 2017 (ECF No. 20) before being re-assigned to my docket on June 8, 2018 (ECF No. 40).

During an initial status conference on February 22, 2017 Petitioner was directed to file additional medical records by April 7, 2017. Specifically, Petitioner was asked to file additional evidence demonstrating six months of sequelae. Scheduling Order on 2/22/2017 at 1. Petitioner filed additional records on April 7, 2017 and May 16, 2017. Exs. 5-7.

On September 1, 2017, Respondent filed a Rule 4(c) Report stating, "this case is not appropriate for compensation under the terms of the Vaccine Act." Resp't's Rep. at 1, ECF No. 18. Along with his position, Respondent submitted a Motion to Dismiss ("Resp't's Mot."), arguing that Petitioner had not met the six-month severity requirement under the Act. ECF No. 18. Respondent contended that even if Petitioner were able to attribute his November and December 2015 symptoms to his vaccination, the medical records do not support a finding that Petitioner's June 2016 right bicep injury was sequela of the vaccination and initial injury. *Id*. at 5. Respondent concluded that Petitioner's shoulder symptoms following vaccination resolved, and Petitioner suffered "a separate and unrelated injury" in June 2016. *Id*. at 6. Finally, Respondent added that Petitioner "has also failed to establish that he received his flu vaccine in his right arm." *Id*. As such, Respondent argued that Petitioner's case should be dismissed. *Id*. at 7.

On November 11, 2017, Special Master Roth held a status conference in order to discuss the six-month severity requirement. Scheduling Order on 11/1/2017, ECF No. 22. The Special Master clarified that Petitioner's medical records still did not demonstrate six months of sequelae following vaccination. Petitioner's counsel requested additional time for Petitioner to consult with his orthopedic specialist regarding a connection between his right shoulder pain in November 2015 and his bicep rupture in June 2016. *See id.* Special Master Roth directed Petitioner to file a status report by December 15, 2017. *See id.*

On December 18, 2017, Petitioner filed his overdue status report. ECF No. 24. In that report, Petitioner confirmed that he had submitted attendance records from his karate class. *See* Ex. 9. He requested additional time to file affidavits, gym records, and an expert report in support of his petition and the six-month severity requirement.

On January 2, 2018, Petitioner filed two affidavits, authored by himself and his son, Mr. Ben Lamarre. Exs. 10-11. On February 15, 2018, Respondent filed a status report, indicating his intent to defend this case. ECF No. 28. Respondent requested the following additional records that had still not been filed: 1) podiatrist records from 2014 to present, 2) complete gym attendance records from 2014 to present, and 3) karate class attendance records from 2014 to present. Respondent further advised Petitioner to preserve his social media account and requested a status conference following Petitioner's filing of all requested documents.

Over the next several months Petitioner filed records from his podiatrists, Facebook, gym, and karate classes. *See* Exs. 12-18. On April 17, 2018, Petitioner filed a second Statement of Completion. ECF No. 33. Respondent filed a status report on July 9, 2018, disagreeing that the record was complete. ECF No. 42. Respondent stated that Petitioner had not yet filed complete gym records from Anytime Fitness. *See id*. On August 2, 2018, I directed Petitioner to file any additional gym records. *See* Scheduling Order on 8/2/2018, ECF No. 43. Petitioner represented on September 4, 2018 that all records had been filed. ECF No. 44.

I held a status conference on October 30, 2018. *See* Minute Entry of 10/30/2018; *see also* Scheduling Order on 10/30/2018, ECF No. 45. I informed the parties that Petitioner had seemingly proved the location of the injection site by preponderant evidence. *See* Scheduling Order on 10/30/2018 at 1. However, I did not believe that Petitioner had met the Vaccine Act's statutory six-month severity requirement. *Id.* I clarified that the records do not indicate that Petitioner's right shoulder pain lasted from November 5, 2015, the date of vaccination, to May 5, 2016, six months after the date of vaccination. *Id.* Petitioner's counsel stated that the records were indicative of continued shoulder pain lasting for more than six months. *Id.* I told Petitioner's counsel that I disagreed, and that Petitioner should express his assertions in a responsive brief to Respondent's Motion to Dismiss. *Id.* at 2; *see also* Vaccine Rule 5 (which allows a special master to make tentative findings).

On November 29, 2018, Petitioner filed his responsive brief to Respondent's Motion to Dismiss, stating that Petitioner should prevail under a summary judgment standard. Resp. to Mot. to Dismiss, ECF No. 46. Petitioner urged that Respondent's motion should be denied because the medical records and affidavits "all demonstrate that Petitioner, more likely than not, suffered the residual effects of his right shoulder injury for more than six (6) months following vaccination of November 5, 2015." *Id.* at 2. Petitioner first lists the medical appointment with Dr. Salisbury on February 2, 2016 as evidence of continuing shoulder pain.[5] *Id.* at 2-3. Second, Petitioner states that shoulder pain is listed under reviewed problems, history of past symptoms, and problems sections on March 7, 2016 and May 9, 2016. *Id.* at 3. Petitioner argues that this is evidence that Petitioner sought treatment for his shoulder pain on those dates. *Id.* Finally, Petitioner states that he was advised by his orthopedist that there was no resolution, so Petitioner's affidavits provide evidence of modified activities and the use of bands and braces. *Id.*

On December 20, 2018, Respondent filed his reply brief. Respondent's Reply ("Resp't's Reply"), ECF No. 48. Respondent reiterated that Petitioner had not met the six-month severity requirement. *See id.* at 1. Respondent added that Petitioner, in November 2017, had requested an "opportunity to discuss [this issue] with [P]etitioner's orthopedic [physician]," yet no statement from a treating doctor or expert report was filed. *Id.* at 2. Respondent requested a ruling on the record, resolving any factual disputes based on a preponderance of the evidence standard. *Id.*

On June 26, 2019, my chambers requested confirmation, by informal communication, from the parties that all evidence pertaining to the Motion to Dismiss had been filed in order for a decision to issue. Petitioner responded on July 11, 2019, indicating that Petitioner wished to retain an expert to address the six-month severity issue. Respondent replied that same day with his objection.

I held a status conference on August 14, 2019 to discuss Petitioner's most recent request to obtain an expert. *See* Minute Entry on 8/15/2019; *see also* Scheduling Order on 8/15/2019 at

---

[5] On February 2, 2016, Petitioner did visit Dr. Salisbury but not for right shoulder pain. Petitioner mistakenly recounts this visit as one for right shoulder pain in his petition, his first affidavit, and his responsive brief. On February 2, 2016, Petitioner presented to Dr. Salisbury for dizziness, cough, and nasal drip. Ex. 2 at 46-49.

1, ECF No. 49.  During that conference, Petitioner's counsel confirmed that no further records were pending but that Petitioner requested additional time to seek an expert opinion.  Scheduling Order on 8/15/2019 at 1.  Respondent objected, citing Petitioner's lengthy opportunity to procure expert support for his case.  *See id*.  I stated that I would not prohibit Petitioner from seeking an expert opinion.  *See id.*  I further stated that while an expert may be able to opine as to a causal connection between weakened muscle and a bicep tear, they would not be able to offer further factual evidence on this matter, as the contemporaneous medical records speak for themselves.  *Id*. at 2.  Counsel requested thirty days to speak with her client regarding how to proceed.  *Id*. at 2.

On September 16, 2019, Petitioner filed a status report requesting a decision "resolving the outstanding factual issues in this case."  ECF No. 50.  I held a status conference on September 25, 2019, to discuss Petitioner's status report.  *See* Minute Entry on 9/26/2019; *see also* Scheduling Order on 9/26/2019, ECF No. 51.  During the conference, I told counsel that to establish the severity requirement in this case, Petitioner would need to file an expert report articulating a connection between his shoulder injury from November 2015 and his biceps tendon tear from June 2016.  *See* Scheduling Order on 9/26/2019 at 1.  Petitioner's counsel indicated that Petitioner did not intend to file an expert report and requested a ruling on the record.  *Id*.

On October 10, 2019, the parties filed a joint status report, indicating that neither party intended to file additional evidence and that the record was ready for a ruling regarding entitlement on this existing record.  ECF No. 52.

On November 6, 2019, I issued a Decision Denying Entitlement because Petitioner failed to meet the Vaccine Act's severity requirement.  *Lamarre v. Sec'y of Health & Hum. Servs.*, No. 17-10V, 2019 WL 7556396 (Fed. Cl. Spec. Mstr. Nov. 6, 2019).  On December 17, 2019, Petitioner filed a Notice of Election to File a Civil Action.  ECF No. 57.  Petitioner filed an application for attorneys' fees and costs on February 21, 2020.  *See* Fees App., ECF No. 59.  On March 20, 2020, Respondent filed an Opposition to Application for Attorneys' Fees and Costs.  *See* Fees Resp., ECF No. 61.  Petitioner filed a Reply to Respondent's Opposition on April 7, 2020.  *See* Fees Resp., ECF No. 63.

### III.  Parties' Arguments

Respondent argued that "Any award of fees and costs is inappropriate in this case because the [P]etition lacked a reasonable basis, as required by 42 U.S.C. §300aa-15(e)(1)(B)."  Fees Resp. at 1.  Respondent stated that the three years after his petition was filed, Petitioner was "never able to successful [sic] establish six months of sequela.  Failure to establish this essential portion of his claim shows that his claim was not filed with a reasonable basis and did not gain a reasonable basis during the pendency of this case.  Accordingly, the Court should deny [P]etitioner's application *in toto*."  *Id.*  Respondent further stated that Petitioner was never able to show that he suffered the residual effects of his right shoulder injury after December 2015.  *See id.*at 11.  Petitioner sought treatment seven times after December 2015 but not for his alleged shoulder injury and also made no mention of shoulder pain in any of these appointments.  According to Respondent, Petitioner was only able to establish two months of sequelae.  *Id*.  Petitioner's affidavits did not overcome deficiencies in this case, such as the lack of support from his medical records and karate attendance

records which showed that Petitioner consistently attended karate classes and in fact increased his attendance during January through March of 2016.  *See id.* at 11-12.

Petitioner argued that he did suffer from a right shoulder injury as a result of the flu vaccination he received on November 5, 2015.  Fees Reply at 9.  Petitioner sought treatment for his shoulder pain but was advised to practice home exercises and to follow up in three weeks.  *Id.* Petitioner claims he never followed up because his orthopedic specialist informed him that there was nothing he could do to help Petitioner's pain other than recommend home exercises.  *Id.* Petitioner contended that his June 2016 right bicep tendon tear was a result of owning a construction company, frequently working out, and his weakened right shoulder from the vaccination.  *See id.*  The factual issue of Petitioner's right bicep tendon tear resulting from Petitioner's SIRVA injury from November 5, 2015 gave Petitioner reasonable basis to file his claim so that a Special Master can make that determination.  *See generally id*. at 10-11.  While the Special Master did ultimately determine that the right bicep tendon tear was a new injury, not a continuation of his SIRVA injury, Petitioner acted reasonably in obtaining evidence to support his claim, and properly moved for a decision once the factual issue resolved.  *Id.* at 11.

## IV.    Legal Standard

Under the Vaccine Act, an award of reasonable attorneys' fees and costs is presumed where a petition for compensation is granted.  Where compensation is denied, or a petition is dismissed, as it was in this case, the special master must determine whether the petition was brought in good faith and whether the claim had a reasonable basis. § 15(e)(1).

### A.  Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996).  Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied.  *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### B.  Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim.  *Turner*, 2007 WL 4410030, at *6-7.  Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion.  *Sharp-Roundtree v. Sec'y of Health & Human Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis,

it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014).  The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286.  The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290. *See also Turpin v. Sec'y Health & Human Servs.*, No. 99-564V, 2005 WL 1026714, \*2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Human Servs.*, No. 99-539V, 2005 WL 1026713, \*2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney).  The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Human Servs.*, No. 2019-1596, 2020 WL 4810095 at \*5 (Fed. Cir. Aug. 19, 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert).

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017).  Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis.  "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018).  Objective medical evidence, including medical records, can constitute evidence of causation supporting a reasonable basis. *Cottingham*, 2020 WL 4810095 at \*7.

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at \*7 (Fed. Cl. Jan. 5, 2018).  Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1).  Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Human Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Human Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury)).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors.  It is appropriate to analyze reasonable basis through a totality of the circumstances test that focuses on objective evidence. *Cottingham,* 2020 WL 4810095 at \*5.  The

factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289.  This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis.  *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## V.  Discussion

### A.  Good Faith

Petitioners are entitled to a presumption of good faith.  *See Grice*, 36 Fed. Cl. 114 at 121. Respondent has not raised an issue with respect to good faith in this matter.  *See* Fees Resp.  Based on my own review of the case, I find that Petitioner acted in good faith when filing this petition.

### B.  Reasonable Basis

As noted above, the standard for establishing reasonable basis is lower than that required to prevail on a vaccine-injury claim. *Chuisano,* 116 Fed. Cl. 276 at 287.  However, Petitioner is still required to provide *some* evidence that he experienced six months of sequelae from his November 5, 2015 flu vaccination.

The special master's analysis of reasonable basis should center around "an objective evaluation of the relevant medical information that served as the basis for petitioner's claim." *Frantz v. Sec'y of Health & Human Servs.*, 2019 WL 6974431 (Fed. Cl. 2019) (denying motion for review); *Cottingham*, 2020 WL 4810095, at *4 ("Reasonable basis…is an objective test, satisfied through objective evidence.").  An examination of the relevant medical information demonstrates that Petitioner has not presented objective evidence in the form of medical records that Petitioner suffered from six months of sequelae or a medical opinion that showed that Petitioner's June 2016 right bicep injury was related to his right shoulder injury from the November 5, 2015 vaccination.

#### 1.  Petitioner's Medical Records do not Establish Reasonable Basis

Petitioner's medical records show that he experienced right shoulder pain for approximately two months after vaccination.  The last record that referenced shoulder pain was on December 21, 2015, when Petitioner saw Dr. Mariorenzi.  Ex. 8 at 1.  Petitioner had multiple medical appointments in the subsequent months but none of those records reflect that Petitioner continued to experience shoulder pain.

The only reference to shoulder pain that I observed in any of these records is in the records from Roger Williams Medical Associates.  On May 9, 2016, Petitioner visited Dr. Botelho for right foot pain.  During that visit, the record indicates that the "Reviewed Problems" include, "Dermatophytosis, Neuroma, Melanocytic nevus, Hyperlipidemia, Essential hypertension, Allergic rhinitis, Seborrheic dermatitis, Shoulder pain, Backache, Foot pain, Hammer toe, Dizziness, Cough, Dysuria."  Ex. 2 at 38.  In examining the entirety of Exhibit 2, it is clear that the list of reviewed problems during each visit includes the complete history of complaints in

Petitioner's medical history, and that all of the issues in the list of reviewed problems are not ongoing issues. This entry does not indicate that Petitioner experienced shoulder pain on May 9, 2016. In fact, the HPI section in the record is dedicated to summarizing Petitioner's foot pain. *See id.* It states, "Roger reports that his R foot has been hurting him for a long time. … He denies SOB, chest pain, palpitations, dizziness or fever. He has no other concerns today." *Id.*

Between February and June 2016, Petitioner presented for seven different medical visits to Dr. Botelho's office, GCTC, his urologist, and a podiatrist for a myriad of other symptoms. (February 2, 2016, Ex. 2 at 46-49; March 7, 2016, Ex. 2 at 41-46; April 9, 2016, Ex. 4 at 10; April 25, 2016, Ex. 2 at 12; May 9, 2016, Ex. 2 at 38-41; May 19, 2016, Ex. 2 at 9-11; June 20, 2016, Ex. 2 at 8). The medical records indicate that Petitioner did not complain of shoulder pain or seek treatment for shoulder pain at any of those visits. This lack of reference to shoulder pain in any of these records leads me to conclude that Petitioner was not experiencing shoulder pain.

On June 25, 2016, Petitioner presented to GCTC for a right bicep injury. He stated that he was "moving plywood and felt a pop on [his] upper [right] bicep," and indicated the onset of his injury was *two days prior*. The medical records do not note any mention of previous or ongoing shoulder pain. Further, on July 8, 2016, Petitioner presented again to Dr. Mariorenzi for his right bicep injury. Dr. Mariorenzi noted this injury as a new problem.

There is no evidence in the medical records that Petitioner's June 25, 2016 injury was a continuation of his previous shoulder pain. At his GCTC visit on June 25, 2016, Petitioner himself attributed his bicep injury to heavy lifting, noted the onset of his injury as two days prior, and did not allude to any ongoing shoulder pain. Subsequent medical visits also date his right bicep injury back to the plywood lifting incident with no mention of any previous right shoulder pain (*See* Ex. 2 at 37, medical visit on July 7, 2016 where Petitioner was assessed with "spontaneous rupture of other tendons, right upper arm."; Ex. 3 at 2, medical visit on July 8, 2016 where the records indicate "a few weeks ago [Petitioner] felt a popping sensation at the right shoulder and subsequent prominence of the distal biceps muscle."; Ex. 6 at 6, medical appointment from November 29, 2016 where the "history of present illness" section states, "about four months post a right proximal biceps tear. He had acute tearing sensation and subsequently had pain and deformity."). These records establish that Petitioner suffered a right biceps injury while lifting plywood in June 2016. There is no evidence in the medical records that connects Petitioner's shoulder pain from November 2015 with his biceps injury from June of 2016.

### 2. Medical/Expert Opinion

Petitioner did not submit an expert opinion regarding any possible connection between his two-months of shoulder pain after vaccination and his June 2016 right bicep tear. Further, none of Petitioner's treating physicians articulated such a connection.

### 3. Karate/Gym Attendance Records do not Establish a Reasonable Basis

Petitioner also submitted a brief, unsigned letter from Christine Bannon-Rodrigues, the chief instructor/co-owner of Don Rodrigues Karate Academy. Ex. 9. In this letter, Ms. Bannon-Rodrigues stated that Petitioner had a decrease in attendance at the karate academy from December

2015 through June 2016.[6]  *Id.*  She further stated that Petitioner stopped training from July 2016 through December 2016.  *Id.*

Petitioner submitted his karate class attendance records for 2015 and 2016.  Ex. 12.  The records indicate that prior to his vaccination, Petitioner attended class five days in August 2015 and four days in both September and October 2015.  *Id.* at 1.  Following his vaccination, Petitioner attended the following number of classes per month: four days in November 2015, five days in December 2015, seven days in January 2016, six days in February 2016, five days in March 2016, four days in April 2016, and five days in May 2016.  *Id.*  The records further show that Petitioner did not attend classes from June 2016 through the remainder of the year and resumed classes on January 17, 2017.  *Id.* at 1, 2.

These records illustrate that in the months preceding vaccination, Petitioner attended karate class between four and five times per month.  Ex. 12.  After his vaccination on November 5, 2015, his attendance for the remainder of the year was unchanged, as he attended karate four days in November and five in December.  *Id.*  His attendance subsequently *increased*, however, to seven days in January 2016, six days in February, and five days in March.  *Id.*  Petitioner attended four days in April and five days in May.  *Id.*  He suspended his attendance in June 2016 until January 17, 2017.  *Id.*

Petitioner also filed his gym attendance records.  Ex. 17, 18.  The records do not contain any evidence of attendance in 2015.  Ex. 18 at 2.  In 2016, Petitioner utilized his gym membership on four days in March 2016, six days in April 2016, four days in May 2016, and one day in June 2016.  *Id.*  No other gym records were filed.  *Id.*

In his affidavit, Petitioner claimed that his shoulder pain affected his ability to go to his gym and karate classes.   Ex. 10 at 2.  However, these records do not corroborate his statement.  As evidenced below, I do not view Petitioner's karate class or gym records as supportive of continued right shoulder pain past December 2015, since Petitioner's highest attendance in karate class was in January and February of 2016.  In fact, Petitioner's continued class attendance and suspension of attendance in June 2016 provide evidence supporting a resolution of his right shoulder pain in December of 2015 and the onset of a new injury in June 2016.  Petitioner's medical records, gym, and karate class attendance records do not provide any objective evidence that he experienced six months of sequelae from the November 5, 2015 vaccination.  In fact, these records undermine Petitioner's affidavit, reducing that document's reliability.

### 4.   Petitioner's Affidavits do not Establish Reasonable Basis

Petitioner submitted two affidavits that he authored and one authored by his son. Petitioner's first affidavit does not discuss a link between his vaccination and biceps tear.  In his second affidavit, Petitioner stated that he did not seek medical treatment after December 2015 because Dr. Mariorenzi told him that there was no other solution and he "lost faith in doctors." Ex. 10 at 1.  Petitioner added that he modified his regular activities in order to cope with the

---

[6] The attendance records themselves contradict this statement and demonstrate that Petitioner's attendance at karate class did not decrease from December 2015 through June 2016.

shoulder pain, and he stopped going to the gym and reduced his karate class attendance.  *Id*. at 2.  He stated that when he did attend karate class, he did not participate in the class, and just did stretches for his back.  *Id.*  Petitioner indicated that a letter had been provided from his karate academy.  *Id.*

Petitioner further stated that "[p]rior to June of 2016, my shoulder pain never went away." *Id.*  He indicated he firmly believes that his right bicep tear was a result of his vaccination and not from moving plywood.  *Id.*

Mr. Ben Lamarre, Petitioner's son, submitted an affidavit on January 2, 2016.  *See* Ex. 11.  He stated that he has worked with his father in his remodeling business since 2014.  *Id*. at 1.  He recalled that in November of 2015, Petitioner complained about his right shoulder "[feeling] funny" since the vaccination.  *Id*.  He claimed that his father's arm never recovered, and Mr. Lamarre had to take over the remodeling portion of his father's business.  *Id*.  He recalls that in June 2016, his father was helping him move a bulky piece of plywood when Petitioner felt a pop in his shoulder.  *Id*.  He noted that in the past, his father could lift two plywood pieces without incident.  *Id*.

None of the affidavits submitted in this case provide Petitioner with reasonable basis.  Both Petitioner and his son state that Petitioner's pain continued after December 2015 (the last medical appointment), but no objective piece of evidence supports this assertion.  As discussed below, Petitioner's karate attendance records actually undercut some of the assertions in his affidavit.  Based on the records filed in this case, I do not find that Petitioner has submitted sufficient objective evidence to establish reasonable basis.

While I am cognizant that counsel helped bring the case to a resolution, the legal standard I must apply does not permit an award of fees and costs in this case. *Cottingham*, 2020 WL 4810095, at *7 (stating that evidence of attorney conduct has no bearing on the reasonable basis analysis); *see also Simmons*, 875 F.3d at 636. The objective evidence in the record does not establish a reasonable basis for bringing this Petition.

## VI.     Conclusion

Based on the foregoing, Petitioner's Motion for Attorneys' Fees and Costs is **DENIED**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court SHALL ENTER JUDGMENT in accordance with this decision.[7]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.